953 F.2d 1388
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Val G. TATUM, Petitioner,
v.
DRUG ENFORCEMENT ADMINISTRATION, Respondent.
 No. 91-70328.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 9, 1992.*
Decided Jan. 16, 1992.
 
 Appeal from the Order of the Drug Enforcement Administrator, D.E.A. No. 89-45.
 DEA
 AFFIRMED.
 Before: FARRIS, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 * Val G. Tatum is the owner of Val's Pharmacy (collectively "Tatum"). On March 15, 1988, Michael A. Sanders ("Sanders") and Martin Levine, inspectors with the California Board of Pharmacy, went to Val's at the request of the Drug Enforcement Administration (D.E.A.).[1] Claude Reese ("Reese"), the pharmacist on duty, was asked to count the stock on hand, and the inspectors removed a box of prescriptions for their audit.
 
 
 3
 On March 22, 1988, Theresa Garnett ("Garnett"), a Diversion Investigator with the DEA, met with Sanders. Garnett reviewed the triplicate prescriptions issued by a Dr. Adkins--whose clinic was the subject of a search warrant executed March 15, 1988--and signed a receipt for these prescriptions, intending to remove them. In affidavit testimony, Garnett claims she decided against removing them from the custody of Sanders. Sanders, however, testified at the hearing that Garnett did remove approximately 500 prescriptions from his office, which were later returned to him and included in the audit.
 
 
 4
 On June 28, 1988, Sanders informed Tatum and Reese that the audit revealed significant shortages of some drugs. Reese provided information from computer records regarding whether certain prescriptions dated within the audit period were actually filled. Sanders amended his audit to reflect his new information.
 
 
 5
 The government contends that Tatum had the following unexplained shortages: (1) 347 tablets of Preludin, 75 mg.; (2) 9,859 tablets of aspirin with codeine, 60 mg.; (3) 5,641 tables of APAP with codeine, 60 mg; (4) 9,545 tablets of Diazepam, 10 mg.
 
 
 6
 An ALJ conducted a hearing and recommended revocation of Tatum's certificate of registration determining that continued registration was inconsistent with the public interest under 21 U.S.C. § 824(a)(4) (1988). On April 12, 1991, the Drug Enforcement Administrator adopted the ALJ's opinion and issued an order revoking certification of registration. 15 Fed.Reg. 16,117 (Apr. 19, 1991).
 
 II
 
 7
 "Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive." 21 U.S.C. § 877 (1988). This fact finding authority has been delegated to the Drug Enforcement Administrator. 28 C.R.F. § 0.100(b) (1991). For agency decisions, we must use the arbitrary and capricious standard of review. United States v. One 1985 Mercedes, 917 F.2d 415, 422 (9th Cir.1990).
 
 III
 
 8
 Tatum first claims that the government did not provide evidence of how approximations for aspirin with codeine, 60 mg., made in the first inventory provided by Reese, may have affected the audit figures. However, both federal and state laws require that inventory records be kept, 21 U.S.C. § 827; 21 C.F.R. § 1304.03(a) ("[e]ach registrant shall maintain the records and inventories"); Cal.Bus. & Prof.Code § 4232 (West 1990) ("[a] current inventory shall be kept by every ... pharmacy ... holding a currently valid and unrevoked certificate"), and estimation in these records is allowed. 21 C.F.R. § 1304.17(b) (1991) ("[i]f the substance is listed in Schedule III, IV, or V, he shall make an estimated count or measure of the contents, unless 1,000 tablets or capsules in which case he must make an exact count of the contents"). In the instant case, the inspectors allowed Reese to estimate the schedule III controlled substances. The inventory was properly made assuming the labels on the sealed containers were correct and estimating the number of units in the open containers.
 
 
 9
 Moreover, Tatum has presented no evidence in this appeal to indicate that the estimates were wrong, and there is no evidence that Tatum himself did any estimation of the open containers during the June 11, 1987 inventory that would conflict with the original estimations. Speculation of some possible miscalculation--which could work for or against Tatum--would hardly account for a 9,859 tablet difference for aspirin with codeine. Moreover, the government is correct that "[i]t is not the government's responsibility to determine that petitioner's own inventory figures are inaccurate when petitioner does not provide information to support such a determination." We can assume, because there is no evidence to the contrary, and given the statutory requirement that the pharmacy keep accurate records, that the inventory provided by Reese, as a pharmacist for Val's, was complete and accurate. See 21 C.F.R. § 1304.17; Cal.Bus. & Prof.Code § 4232.
 
 
 10
 Therefore, there was substantial evidence for the ALJ to find that the initial March 15, 1988 inventory was correct, and that "even if Respondent maintained several open bottles of the drugs at issue, it is unlikely that estimate errors would significantly affect the audit computation." ALJ op. at 9.
 
 
 11
 Next Tatum argues that the evidence at the hearing only consisted of invoices from the drug wholesaler Barnes, when invoices from both Barnes and another drug wholesaler, Ultra, were used to determine the number of drug acquisitions by Val's during the audit period. Tatum argues that without the actual invoices the court could not determine if the government figures were correct.
 
 
 12
 This argument has no merit given the narrow scope of our review. The ALJ heard testimony from Sanders concerning the Ultra invoices and apparently found it credible. The fact that it may have violated the rules of evidence in a trial is irrelevant, for in an administrative procedure, "any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence." 5 U.S.C. § 556(d) (1988) (incorporated into D.E.A. hearings by 21 C.F.R. § 1301.54 (1991)). The evidence was not irrelevant, immaterial, or repetitive and Tatum has produced no evidence to cast into doubt the evaluation of Sanders' credibility.
 
 
 13
 Tatum claims that the most important factor to explain the shortages is the fact that Sanders failed to consider computer logs of prescription refills of the drugs during the audit period. The ALJ noted that there was no explanation why these refill records were not given to Sanders in June, 1988 when Tatum became aware of the shortages. ALJ op. at 8 ("Mr. Reese did not supply these computer printouts either on March 15, 1988, when asked for the pharmacy's records or on June 28, 1988, when the investigators informed both Respondent and Mr. Reese of the preliminary audit results"). Moreover the ALJ found that both Reese and Tatum knew that "both original and refill prescriptions are needed to obtain an accurate assessment of the controlled substances dispensed by the pharmacy, and it was Respondent's obligation to produce the necessary documents for the inspections." Tatum failed to produce any evidence that these records were either unaccounted for in the audit, or if unaccounted for, would have made any difference. Therefore, the ALJ's actions were not arbitrary nor capricious when she concluded that "any computer log in existence in March and June 1988 would not have substantiated Respondent's assertion that the inspectors failed to count some refills in the audit computations." ALJ op. at 9.
 
 
 14
 Tatum also claims that Sanders returned several original prescriptions to the pharmacy without counting them in his original audit. This evidence was presented to the ALJ, and, it is claimed by Tatum, not considered by her. However, no evidence is presented in this appeal either that these receipts were presented to Sanders in the original audit, or that taking these additional receipts into consideration would have made any material difference in adequately accounting for the unexplained shortages of drugs. An examination of those prescriptions reveals, for example, that only four prescriptions of aspirin with codeine (60 mg.) or Empirin No. 4--a brand name for aspirin with codeine 60 mg.--were in that group. This could hardly account for the 9,545 tablet shortage.
 
 
 15
 Finally Tatum claims that the discrepancy between the testimony of Garnett and Sanders indicated that Sanders failed to include some of the original prescriptions--those of Dr. Adkins for August, 1987--in his audit. An examination of the record shows that it was not arbitrary and capricious of the ALJ to find that whether Garnett took some of the prescriptions for a time or not, Sanders' testimony was credible when he stated that all prescriptions he took from the pharmacy were included in the audit. ALJ op. at 7 ("I find it unnecessary to resolve the discrepancy between the recollections of Inspector Sanders and Investigator Garnett, for I credit Inspector Sanders' testimony that all prescriptions he took from the pharmacy were included in the audit computations").
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 It should be noted that Sanders visited Tatum on four occasions in 1983 and 1984 when it appeared that Tatum was filling a large number of prescriptions for highly abused drugs and failed to abide by requirements for triplicate prescriptions. Then, on September 13, 1984, Tatum was admonished to cease filling prescriptions not for a legitimate medical use